UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| ANTWAIN BURKS, | § | |
| TDCJ # 01913867 | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 3:17-CV-0146 |
| | § | |
| JAMES MOSSBARGER, *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Antwain Burks, an inmate in the Texas Department of Criminal Justice–Correctional Institutions Division ("TDCJ"), brings this civil rights suit alleging that Defendants required him to perform work duties that were not in compliance with his medical restrictions. Plaintiff proceeds *pro se*. On June 22, 2018, Defendants filed a motion for summary judgment (Dkt. 19). Plaintiff has not filed a response, and the time to do so has expired.[1] Having reviewed the parties' briefing, the applicable law, and all matters of record, the Court concludes that Defendant's summary judgment motion will be **granted** and Plaintiff's claims will be **dismissed** with prejudice for the reasons that follow. Defendant's motion to seal its summary judgment motion (Dkt. 18) will be **granted** because the motion and its attachments contain Plaintiff's confidential medical information.

---

[1] TDCJ's online records reflect that Burks presently is incarcerated at the LeBlanc Unit, the same unit currently listed on the Court docket as Burks' address. *See* Offender Information Details, available at https://offender.tdcj.texas.gov/OffenderSearch/index.jsp (last visited Nov. 30, 2018).

## I. BACKGROUND

Plaintiff originally filed suit in the 412th Judicial District Court of Brazoria County, Texas, and Defendants removed to this Court (Dkt. 1). He brings this suit against four defendants: Warden James Mossbarger of TDCJ's Ramsey I Unit, Correctional Officer Daniel Burton, Sergeant Berchie Taylor, and Correctional Officer Amanda McCree. All defendants were employed by TDCJ and acting in the scope of their employment at all times relevant to Plaintiff's claims in this lawsuit.

Burks alleges in his pleadings that he experiences pain in his lower back, hips, knees, and ankles due to a motor vehicle accident that occurred before he was incarcerated (Dkt. 1-2, at 3).[2] Because of his physical condition, medical personnel at TDCJ placed restrictions on his work assignments, in compliance with TDCJ's classification policy. *See* Dkt. 19-3 (Offender Medical and Mental Health Classification Policy). Specifically, Burks was restricted from performing work involving repetitive squatting, climbing, or walking on wet or uneven surfaces (Dkt. 1-2, at 3; Dkt 19-2, at 10, 14-15). According to the classification policy, the restriction against repetitive squatting precludes work assignments that require "*repetitive* or frequent bending of the knees"; the restriction against climbing precludes assignments "requiring the use of ladders and/or scaffolding"; and the restriction against walking on wet or uneven surfaces precludes "work routinely or frequently requiring walking on slippery, sticky, or uneven surfaces" (Dkt. 19-3, at 7-8) (emphasis original).

---

[2] Throughout this Memorandum, the Court's citations to specific pages in the record refer to the pagination of docket entries on the Court's electronic case filing ("ECF") system.

At the time relevant to this suit, Burks was assigned to work on the "outside medical squad" at the Ramsey I Unit. He claims that, in his work on the squad, he was required to violate all three of his medical restrictions to avoid a disciplinary offense. In particular, he alleges that he was forced to climb into the field wagon that pulls offenders to the job location; that he was forced to pick vegetables from the fields "which again violated his no repetitive squatting restrictions," and that he was forced to walk on uneven surfaces in the fields (Dkt. 1-2, at 4). He claims that the work assignment exacerbated his injuries and that he suffers "constant pain," "trouble walking," and "cannot bend or even sit on a toilet without severe pain radiating from his lower back hips downward to his ankles" (*id.*, at 5). He also alleges that the work duties have caused him "emotional stress" including "bouts of depression" (*id.* at 4-5).

Burks claims that his supervisors for the work assignment, Defendants Taylor and Burton, "knew of the substantial risk of serious harm" to Burks and disregarded the risk "by failing to take reasonable measures to abate the conduct" (*id.* at 5). He claims that Defendant McCree, the Ramsey I classification supervisor, "failed in her specific job duties and responsibilities owed to ensure no offender is placed in job assignments that are condu[c]ive to violations of their medical restrictions" and "acted in deliberate disregard for his health and safety" by assigning him to the particular squad (*id.*). He claims that defendant Warden Mossbarger is liable for his claims because he was apprised of the "illegal action" by his subordinate officers but "simply denied the Step One grievance" (*id.*).

Burks exhausted his administrative remedies through the prison grievance system. He filed a grievance on July 13, 2015, complaining that his assignment to pull weeds with the outside medical squad on the morning of July 7, 2015, had caused him pain and asking to be medically unassigned or assigned to the "inside medical squad" (Dkt. 19-2, at 3-4).[3] Records from TDCJ's investigation into the grievance reflect that, in his assignment, Burks was permitted to work at his own pace and was given a fifteen-minute break every forty-five minutes (*id.* at 11). They further reflect that Officer Burton had instructed Plaintiff to pull weeds by bending at the waist, to comply with the restriction against repetitive squatting, and had assigned Plaintiff to work on a row that was not wet (*id.* at 12). Based on this information, Warden Mossbarger denied the grievance at step one, informing Burks that his assignment was within his restrictions but that he could submit a sick call request if he felt the medical restrictions did not accurately reflect his physical condition (*id.* at 4). Burks appealed to step two of the grievance process, and again received a response that his grievance was unsubstantiated (*id.* at 5-6).

With their summary judgment motion, Defendants present evidence that Burks' work assignment to the "outside medical squad" accommodated all three of his restrictions. TDCJ records from the Ramsey I Unit state that inmates assigned to the

---

[3] Plaintiff's grievance complains of his assignment on only one day, July 7, 2015 (*id.* at 3). The Court record does not clearly state how long Plaintiff worked in the work assignment at issue. Defendants maintain that Plaintiff's assignment on July 7 was "temporary" and "given to Plaintiff while Windham School District was on break" because Plaintiff "normally . . . was excused from job assignments to attend school" (Dkt. 19, at 4 n. 3). In support, Defendants cite to a letter from Burks to medical staff, dated July 8, 2015, requesting a different work assignment and stating that "as a result of" a school break, he had "been called out to perform routine task[s] in the fields, most recently, pulling weeds from around pepper plants" (Dkt. 19-4, at 32).

outside medical squad may have certain listed restrictions, and specifically list "no squatting," "no climbing," and "no walking on wet or uneven surfaces" (Dkt. 19-2, at 13).

Defendants also argue that Burks has not demonstrated that his work assignment in July caused him increased pain and, in support, present medical records from TDCJ. In May 2015, prior to the incident in question, Plaintiff had sought medical care for lower body pain. Upon examination, the provider noted no swelling or deformities and that Plaintiff "move[d] from chair to exam table [without] difficulty," but ordered a pelvic x-ray (Dkt. 19-4, at 19-20). The x-ray showed no loosening of the plates or screws that had been placed in Burks' hip after his motor vehicle accident but revealed secondary osteoarthritic changes in his right hip joint (*id.* at 44). In August 2015, shortly after the July incident, Burks refused medical treatment several times.[4] Defendants state that Burks did not seek medical treatment for pain until September 24, 2015, when he presented with complaints of lower body pain and requested that he be medically unassigned (*id.* at 12-13). At that appointment, the provider observed no apparent distress, noting that Plaintiff was ambulatory with a steady gait and that he moved from sitting to standing without difficulty. She noted that Plaintiff did not complain of any swelling, weakness, or loss of sensation. She reviewed his medical restrictions and concluded that they were "sufficient for [his] lower ext[remity] pain" (*id.*).

---

[4] *See id.* at 4 (form signed by Plaintiff on Aug. 7, 2015 states that he refused treatment for "knee pain"); *id.* at 3 (form signed by Plaintiff on Aug. 13, 2015, states that he refused treatment for "pain in hips and legs").

Burks seeks damages for his physical and emotional harm in the amount of $50,000, in addition to a temporary restraining order instructing "all defendants . . . to remove plaintiff from the Ramsey One Unit's field force/field medical squad" (Dkt. 1-2, at 6). He has not filed a response to Defendants' summary judgment motion.

## II. STANDARDS OF REVIEW

### A. *Pro Se* Pleadings

In reviewing the pleadings and litigation history, the Court is mindful of the fact that Plaintiff proceeds *pro se*. Complaints filed by *pro se* litigants are entitled to a liberal construction and, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citation omitted). Even under this lenient standard a *pro se* plaintiff must allege more than "'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted). Regardless of how well-pleaded the factual allegations may be, they must demonstrate that the plaintiff is entitled to relief under a valid legal theory. *See Neitzke v. Williams,* 490 U.S. 319, 327 (1989); *McCormick v. Stalder,* 105 F.3d 1059, 1061 (5th Cir. 1997).

### B. Summary Judgment—Rule 56

Defendant has moved for summary judgment. Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment "if the movant shows that there

is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); see *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Curtis v. Anthony,* 710 F.3d 587, 594 (5th Cir. 2013). Once the movant presents a properly supported motion for summary judgment, the burden shifts to the nonmovant to show with significant probative evidence the existence of a genuine issue of material fact. *Hamilton v. Segue Software Inc*., 232 F.3d 473, 477 (5th Cir. 2000). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Id*. "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Id*. The nonmoving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case." *Firman v. Life Ins. Co. of N. Am.*, 684 F.3d 533, 538 (5th Cir. 2012) (citation and internal quotation marks omitted).

In deciding a summary judgment motion, the reviewing court must "construe all facts and inferences in the light most favorable to the nonmoving party." *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010) (internal citation and quotation marks omitted). However, the non-movant cannot avoid summary judgment simply by presenting "conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *Jones v. Lowndes Cnty.*, 678 F.3d 344, 348 (5th Cir. 2012) (internal citation, alteration and quotation marks omitted); *see Little v. Liquid Air Corp*., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Likewise, Rule 56 does not impose upon the Court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment. Evidence not referred to

in the response to the motion for summary judgment is not properly before the Court, even if it exists in the summary judgment record. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003).

III. **ANALYSIS**

Burks alleges that the Defendants violated his constitutional rights in connection with his prison work assignment. Section 1983, 42 U.S.C. § 1983, provides a vehicle for a claim against a person "acting under color of state law," such as a state prison official, for a constitutional violation. See *Pratt v. Harris Cty., Tex.*, 822 F.3d 174, 180 (5th Cir. 2016) (internal quotation marks and citation omitted); *Townsend v. Moya*, 291 F.3d 859, 861 (5th Cir. 2002).[5]

Burks was, at all relevant times, a convicted felon in state prison. His claims therefore are governed by the Eighth Amendment's prohibition of "cruel and unusual" conditions of confinement. *See Rhodes v. Chapman*, 452 U.S. 337, 346-47 (1981); *Helling v. McKinney*, 509 U.S. 25, 33 (1993) (the Eighth Amendment "requires that inmates be furnished with the basic human needs, one of which is 'reasonable safety'"). In certain circumstances, prison work conditions imposed on an inmate with medical limitations can violate the Eighth Amendment. "If prison officials knowingly put [an inmate] on a work detail which they knew would significantly aggravate his serious physical ailment such a decision would constitute deliberate indifference to serious medical needs." *Jackson v. Cain*, 864 F.2d 1235, 1246 (5th Cir. 1989). *See Williams v.*

---

[5] Because Plaintiff has clarified that he sues the defendants in their individual capacities only (Dkt. 4, at 2), the Court does not address any official capacity claims.

*Henagan*, 595 F.3d 610, 622 n.18 (5th Cir. 2010) ("Prison work conditions may . . . amount to cruel and unusual punishment"); *Douglas v. McCasland*, 194 F. App'x 192 (5th Cir. 2006); *Williams v. Wooten*, 119 F. App'x 625, 626 (5th Cir. 2004).

Defendants have invoked qualified immunity, and Plaintiff bears the burden to negate the defense. *See Hanks v. Rogers*, 853 F.3d 738, 744 (5th Cir. 2017). Determination of qualified immunity requires a bifurcated analysis: first, the court must decide "whether the undisputed facts and the disputed facts, accepting the plaintiffs' version of the disputed facts as true, constitute a violation of a constitutional right"; and second, the court must determine "whether the defendant's conduct was objectively reasonable in light of clearly established law." *Carroll v. Ellington*, 800 F.3d 154, 169 (5th Cir. 2015) (internal quotation marks and citation omitted); *see Thompson v. Mercer*, 762 F.3d 433, 437 (5th Cir. 2014). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Pratt*, 822 F.3d at 181 (internal citation and quotation marks omitted). "If officers of reasonable competence could disagree as to whether the plaintiff's rights were violated, the officer's qualified immunity remains intact." *Hanks*, 853 F.3d at 744 (internal citations and quotation marks omitted).

Burks alleges that defendant McCree, the classification supervisor who assigned him to the "outside medical squad," forced him to work in violation of his medical restrictions. However, the defendants have presented competent summary judgment evidence that, under the relevant TDCJ policy, Burks' job assignment accommodated all three of his restrictions. *See* Dkt. 19-3 (Offender Medical and Mental Health

Classification Policy), at 7-8; Dkt. 19-2, at 13 (Ramsey Unit records reflect that inmates with restrictions prohibiting squatting, climbing, and walking on wet or uneven surfaces could properly be assigned to the outside medical squad). Burks did not respond to the summary judgment motion and his conclusory allegations in his pleadings cannot suffice to demonstrate a genuine issue of material fact on this issue. *See Jones*, 678 F.3d at 348.

As for Defendants Taylor and Burton, who supervised Burks while he worked on the outside medical squad, Burks alleges that they disregarded a substantial risk of serious harm posed to Burks by the work assignment when they required him to climb into a field wagon, pick vegetables, and walk in the field. However, the Defendants have presented evidence that they assigned him tasks that did not require repetitive squatting, assigned him to work on a dry row, and permitted him to work at his own pace with fifteen-minute "sit down" breaks every hour (Dkt. 19-2, at 11-12). Given this evidence, as well as the evidence that Plaintiff's assignment to the outside medical squad was compliant with his restrictions, Burks' allegations in his pleadings are insufficient to demonstrate a genuine issue of material fact as to whether Taylor and Burton "knowingly" assigned him work that "would significantly aggravate his serious physical ailment." *See Jackson*, 864 F.2d at 1246. Moreover, Burks presents no evidence that the work assignment actually aggravated his physical condition. To the contrary, Defendants have presented evidence that Burks did not seek medical attention for pain in the time immediately after the challenged work assignment and that, when he did seek medical attention for his lower body pain in September, the medical provider concluded that the

medical restrictions in place adequately accommodated his physical condition (Dkt. 19-4, at 3-4, 12-13).[6]

Finally, Burks claims that Warden Mossbarger is liable under the Eighth Amendment because he was aware of, but failed to remedy, the actions of his subordinate officers.[7] A supervisory official is not liable under Section 1983 for the actions of subordinates on any theory of vicarious liability. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691-95 (1978) (holding that supervisory officials cannot be held vicariously liable for their subordinates' actions under Section 1983); *see Iqbal*, 556 U.S. at 677 ("'[S]upervisory liability' is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct"); *Alton v. Texas A&M Univ.*, 168 F.3d 196, 200 (5th Cir. 1999) ("Supervisory officers . . . cannot be held liable under § 1983 for the actions of subordinates . . . on any theory of vicarious liability."). Supervisory officials can be held liable under Section 1983 only if the plaintiff demonstrates (1) the supervisor's personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the deprivation. *See Evett v. Deep East Tex. Narcotics Trafficking Task Force*, 330 F.3d 681, 689 (5th Cir. 2003). Because Burks has not alleged facts

---

[6] As for Burks' claims that he suffered emotional distress or other mental injury, any claim for damages is barred by 42 U.S.C. § 1997e(e), which provides that "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act." Additionally, his request for injunctive relief removing him from the Ramsey I medical squad is moot because Burks is currently incarcerated at the LeBlanc Unit.

[7] As held above, Burks has not demonstrated a genuine issue of material fact as to any violation of his Eighth Amendment rights by Mossbarger's subordinates.

supporting liability under either theory, Mossbarger is entitled to summary judgment on any claims brought against him as a supervisory official.

Defendants are entitled to summary judgment on Plaintiff's Eighth Amendment claims. In addition, for essentially the same reasons, Burks has not met his burden to show that qualified immunity does not protect Defendants this case. *See Carroll*, 800 F.3d at 169.

## IV. <u>CONCLUSION</u>

For the reasons stated above the Court **ORDERS**:

1. Defendants' motion to seal its summary judgment motion and attachments (Dkt. 18) is **GRANTED**.

2. Defendants' motion for summary judgment (Dkt. 19) is **GRANTED**. All of Plaintiff's claims are **DISMISSED with prejudice.**

The Clerk will provide a copy of this order to the parties.

SIGNED at Galveston, Texas, this 6th day of December, 2018.

_____
George C. Hanks Jr.
United States District Judge